Our next case for argument, United States v. Typhon, Corbett v. Smothers Good morning, Your Honors. My name is Jonathan Edelstein. I have the privilege of representing the defendant appellant Typhon Corbett. I'd like to address the sentencing aspect of the case first because this is really an aspect of the case where the government and the defendant ought to be on the same side. I've handled many cases where the government agreed to make a recommendation of a sentence and a plea bargain. Then they did it, but their heart wasn't really in it. That wasn't this case. The government not only made a recommendation, they went into great detail. They apprised the court of four specific comparator cases, one of which involved a murder plus multiple additional attempts, one of which involved MS-13 members who killed a 16-year-old minor. I know the government states in its brief that there are some aspects of those cases less serious than this one, but there are also other aspects that are more, a child victim or multiple additional attempted murders. And the government, during its sentencing presentation, specifically referenced unwarranted disparities and stated that in light of these and other cases, and actually stated that in general cases of this type tended to cluster in the 35-year range and that a 35-year sentence would avoid unwarranted disparities. And that is a key reasonableness factor. And certainly I know the government is arguing in its brief that the sentence was not shockingly high. Their citing cases, many of which involved leaders of gangs or involved sex trafficking or involved other factors that are not present here. This whole line of argument is one that's very difficult. We hear it all the time about whether this was too much or too little, and on most of this, we leave the discretion to the district court. The argument you made, which is more interesting to me, is the novel argument about whether he waived prosecution, trial, and also punishment, and whether that is a separate thing that he must have waived. Now that's a new and peculiar argument, but it's based on a literal reading of that, and I think that's an argument I'd like to hear more of. Let me tell you right away what my problem with that, and that is that there wasn't that you did then when the court says, do you want to withdraw your plea? With that clearly before them, you didn't say no. So it looks as if that could be at least forfeited and therefore plain error, and if the argument is a new argument, as I take it it is, then is it plain error? Well, Your Honor, I would submit that it's not plain error because this was not an issue that the defendant was required to withdraw his plea in order to assert. As we've stated in the briefs, a guilty plea waives issues relating to guilt and waives pretrial issues, but it does not waive sentencing issues, and we've cited case law that holds that a guilty plea doesn't waive issues relating to the sentence, and if a guilty plea doesn't waive issues relating to the sentence, then it is not, and it shouldn't be. But didn't the court before saying, do you want to withdraw your guilty plea, also raise the sentence, mention the sentence? I think it did, and if it did, then, you know, what I'm saying is the argument you are making has something about the distinction, has something to it, but I'm not sure it applies here. Well, Your Honor, it does apply here because categorically this court has found that a guilty plea doesn't waive sentencing issues, and if a guilty plea doesn't waive sentencing issues, then either, then any failure to move to withdraw the guilty plea... Again, it may not do so generally, but if before a question is not a guilty plea but the withdrawal of a guilty plea, the court says to you, do you want to withdraw this in the light of even the sentence, then doesn't that change it because then, in effect, you're saying you're not withdrawing, you're not objecting to the sentence. Well, I mean, the defendant did not waive the issue, and the court certainly never gave Mr. Corbett any warning that, well, if you don't withdraw your guilty plea, you're going to be waiving this not only for purposes of the plea but for purposes of sentencing, and really, you know, the ultimate rationale of the court's decision was that this was, you know, something that related to, you know, it was an issue that had to be raised before or at trial. It was a pretrial issue, and that after the guilty plea is just too late. The court never advised Mr. Corbett that, look, if you don't move to withdraw your guilty plea, I'm going to consider this issue waived now. Instead, what the court did was decided it on the merits. The court, you know, held that there was no independent right not to be punished and never again mentioned any issue of waiver. So I would submit, you know, that there was never any effective waiver of sentencing issues, and moreover, certainly for the reasons stated in the brief, this is a statute that's phrased in the disjunctive that there are independent rights not to be prosecuted, not to be tried, and not to be punished. Can you be convicted? Well, if you can't be tried, then you can't be convicted after trial. The statute doesn't say you can't plead guilty, but it doesn't specifically mention conviction, but it does specifically mention punishment, that, you know, if you plead to a time barred count where there is an independent bar to being sentenced on it, and certainly... What would happen under your reading? He hasn't, he has waived the statute of limitation with respect to the trial and all of that, but he hasn't waived it to the punishment, so what happens as a practical matter in a case like that? Well, that a judgment would be entered, but that the judgment could not include punishment for that offense. In this case, he did... We would say you are guilty because you've waived the statute of limitation with respect to that, but you can't be punished. Yes, and a judgment of conviction would be entered, the guilt would be in his record, he would suffer all consequences, you know, collateral consequences of having been convicted of that crime. So it's not, you're saying it's not absurd. It may not make much sense, but it's not absurd, and they didn't put a comma in. Yes. Or they did put a comma in. There was a comma, yes. They did put the comma in, and as we, under the cases we've cited in our brief, this court and the Supreme Court repeatedly have found that kind of punctuation to be purposeful. Can I ask, so standard of review, I can't tell for sure, you can tell me, if this specific argument as to the or punishment argument was raised below. There's some dispute about a sealed filing and a disjunctive argument, and I can't, I don't have the sealed filing, so I don't know if it was the same argument or not. If it wasn't, then we're under plain error, and I think at that point, I think going back to Judge Calabresi's original question, you'd have to tell us what case this follows from so as to be plain error, and if it's novel, then it's not. So was the or punishment argument that's being made now made below? Well, I would argue that it was made when Mr. Corbett specifically raised the issue of statute of limitations with respect to sentencing, and didn't, as Judge Calabresi has pointed out, didn't make any explanations. Well, you could raise the issue with respect to sentencing and say, you should take it into account, what I'm saying is you should take it into account for purposes of 3553A. Well, and then on October 4th, 2023, during the colloquy, the district court stated, I don't know, you know, engaged with this, stated, I don't know that I can impose punishment on an expired count, and that was what that colloquy that day was all about. So, you know, this issue was raised, and it was specifically decided by the district court. I still have trouble seeing where it was raised and specifically decided. I'll have to go back and look more clearly. But my own impression, like Judge Nathan, is that this very interesting argument was not really directed, because you see, again, there's a sandbagging point here. If the argument were raised directly, then the court could have said to you, okay, this is a valid argument. Do you wish to withdraw your plea in the light of that argument? And then you would have to decide whether you would be willing to withdraw the plea, go back, and possibly have a capital sentence be brought against you or not. But by not raising it clearly, you sandbag the court, which is just where plain error is the most important. Well, I would submit there was no sandbagging here. I didn't mean, look, I never mean when I make the sandbagging argument that it was I only mean that the reason we are so strict on some categories of plain error is because if we weren't, it would invite sandbagging, not by you, maybe, but by somebody else. I mean, I would add to that, Your Honor, that the statute of limitations issue with regard to punishment was originally raised pro se. No doubt that it was. And that should be, you know, the well-settled case law is that pro se arguments should be taken to raise the broadest issues that they suggest. There's a great deal of leeway being given. And I would certainly, I would submit that in light of the way the issue unfolded in the district court and in light of the way the colloquies proceeded, there was no unintentional sandbagging either. The district court recognized the issue. I don't know that I can impose punishment on an expired count. That's, I believe, following page at A106FF of the record that was the appendix originally filed. Now, if you take that and then go to the court saying, do you want to withdraw your plea, you can also read what the court is doing when it says, do you want to withdraw the plea in the light of that which is said before. That is, we can either treat it as having been raised and then waived when you don't withdraw the plea, or not being clear enough in which case it wasn't raised. Well, it was also a case where I think once, you know, in the subsequent proceedings where the court states there's no authority, quote unquote, for the principle that a defendant can be convicted on account and not punished, that it was, you know, that this was conditional upon withdrawal of the plea, that, you know, then the district court decided the issue. I mean, at that point, the district court had decided the merits, said you've got to withdraw your plea in order to do this. And then there's where the defendant had previously said not, and there's now a preserved appealable issue before the court. Can I ask, so under your theory, if you do raise a statute of limitations defense which gets tried and rejected, leading to conviction, you would say that you can then re-raise it at sentencing and have the judge come to some conclusion? No, Judge, because then there would be a jury verdict that would be conclusive as to sentencing. Jury verdict that, you know, where a statute of limitations issue was contested and submitted to the jury, and where a jury issues a verdict that the offense occurred within the statute, then that's conclusive just as any other aspect of the jury verdict would be. Really, the only situation where this would even come up is a situation like this, Judge, where it's not the issue. Why isn't it conclusive then of a plea to the conviction? That's, I mean, and so doesn't that just follow what you just said? We've got case law that says you've got to raise the statute of limitations as a defense. He's waived his right to a trial with respect to the conviction, and so for precisely the same reason that you just articulated, it's determined for purposes of sentencing. But there was a specific clause in the plea agreement stating that there was a waiver of a statute of limitations defense for counts that were not time barred at the time. So there wasn't as complete a waiver and not as complete a surrender as a jury verdict would represent. But that didn't go to the fact that, that didn't go to the legal reality that a plea to a count is a conviction on that count waiving statute of limitations defenses. There's nothing in this plea agreement, therefore it's determined by the plea. There's nothing in the plea agreement that carved out what you're asking us to carve out. Well, Judge, where something is submitted to a jury, you know, based on evidence of trial, and the jury reaches a verdict, that's one thing. Right, that's why you go to trial if you have an issue, and that's precisely what he said. He didn't want to withdraw his plea. I mean, if the plea agreement had been worded differently, Judge, I might agree with you, and we might not be here. If the plea agreement were worded differently, I might agree with you. But the plea agreement did have a carve out with respect to its waiver. It said, you know, statute of limitation counts that are not time barred as of the date of this agreement. So it's, you know, the government itself wrote that into the plea agreement. It would be easy enough in the future for the government to word its plea agreements differently, but in this case where the language of the plea agreement. Do you want us to read the plea agreement to say I'm pleading to this count, but I still have the ability, I guess, at sentence. I mean, you would see it more naturally would be I want to be able to appeal the statute of limitations or something, I guess. But you would have a plea agreement that says I'm pleading to this count, but I'm carving out my ability to have litigated by the judge rather than the jury the question of the statute of limitations. Well, and that would be one way to do it, but I would submit, as we stated in the briefs, that in this case the government effectively made that carve out by including limiting language in the plea agreement. And if the government had said. With respect to other statute of limitations, not with respect to this. Well, it said with respect to any. I mean, you want us to imply something from what was there that isn't there, don't you? Well, plea agreements are read strictly against the government, and there was no language in that plea agreement that said anything about other counts or counts not in the indictment. It just said counts. And I come back to a very simple thing. If this was clearly before the court, then why didn't the court simply say do you want to withdraw your plea with respect to punishment? That is, if a thing was made clear to that, any sensible court, rather than getting into complicated issues about whether statute of limitation applies or not, would have simply said what it said with respect to everything else. Okay, do you want to pull out? But the court didn't. And I just can't imagine that the court understood the argument because I don't think the argument was made clearly to it. Because if it had, that's what any court would do. Well, I think that the court did frame the issue that way or in terms, you know, effectively that way at several points during the colloquy and made a merits decision that you can't waive punishment. You know, you can't, the court decided that you can't assert a statute of limitations defense just to punishment. You've got to withdraw the whole plea. And that's the error that we're assigning. Good. Judge, I see I'm way past my time and I thank the court for its indulgence, but I will reserve for rebuttal if the court has no further questions. Thank you. Okay, Mr. Ungar, I think you're next. We'll do both of the appellants and then the government. Good morning and may it please the court. I'm Randall Ungar. I represent Bundell Smothers on this appeal. I would submit that even if the prior grand jury testimony of government witness Bullock was admissible as substantive evidence, it should still have been excluded. Because for one thing, his prior testimony was not subject to meaningful questioning by the defense. And because the government did not limit the evidence of his prior statements to grand jury testimony. They also introduced statements allegedly made by the witness inside an ambulance and later at a hospital where he was being treated. And under circumstances which I would submit lack any indicia of reliability. Why don't those other ones come in under 801D1C? Which other? I'm sorry. What you call hearsay in the ambulance, the non-grand jury testimony. Well, I would submit the grand jury testimony, at least that was given under oath. So there's some indicia. Right, that's what 801D1A requires for it to come in as non-hearsay evidence. 801D1C, which goes to prior identifications, doesn't require it. No, I understand. So why don't those come in, why don't the non-grand jury prior identifications come in as 801D1C? I would submit that if you had a formal identification procedure such as a line-up or a show-up or perhaps a photo array identification procedure, those would apply in that situation. But where we don't even know what the circumstances were, whether the witness was being questioned by, let's say, the EMTs or questioned by doctors or whoever he might have been speaking to in those environments. It's unclear that there was any reliability that we could attach to the uttering of those statements. We simply don't know. And in a formal identification procedure, we would have some assurance that there were procedures followed and that there was some reliability attached to the procedure. Those other statements, laying in an ambulance on a gurney or on a gurney in a hospital in an emergency room, I just don't think they qualify. So what's the best case for that proposition that to get in under 801D1C, we need something like a formal line-up identification or show-up or the like? Well, I would submit that that would make the question much simpler to resolve. If you had law supporting it, it's true. But if you just look at it logically where, let's say, a detective is running a line-up or a photo identification procedure and indicates that certain practices were followed, where there was no suggestiveness involved in the identification procedure, then we have some way of assuring ourselves that it's a reliable procedure. Here, we just don't have that. And the other problem I would submit with the admission of the evidence was that there was simply no balancing of the probative value versus the substantial danger of unfair prejudice. Pursuant to Rule 403 of the Federal Rules of Evidence, I believe that there needed to be some sort of a balancing of the probative value as opposed to the danger of prejudice. This incident was an extremely inflammatory and prejudicial incident. In my mind, it felt to me like it was more prejudicial. You're talking about the leg amputation?  Did that come in anywhere else during the trial? There were other witnesses, I believe, who testified, possibly a detective. I don't recall specifically who, but it was not just Mr. Bullock who testified about it. There were other witnesses, police officers, who did. But your argument that it coming in through the grand jury testimony, even though it's already in other ways, would require balancing with respect to the grand jury testimony that tips over to 403. I would say yes, that there always needs to be a balancing of the probative value. Yes, the evidence might be relevant to some issue, although in my opinion, the only relevance it had or probative value was to show that Mr. Smothers had a propensity for violent activity. To me, that was the main reason why the evidence was introduced, because I really didn't see the probative value as to any other issue, any proper issue that the jury might have. Is your appeal issue with respect to any reference to it throughout trial or just through the grand jury testimony? Because I understood it to be through the grand jury testimony. That's correct. I didn't address the other evidence that was introduced, but I think it was really the testimony from the witness himself that was the most damaging and prejudicial. I don't think that the police officer or officers who testified about it gave graphic testimony the way the government elicited from Mr. Bullock. That was extremely damaging, and I mean, what I was going to say was, in my mind, the act itself was maybe more horrifying than even if he had been murdered, because he was left to have a leg amputated. He was brought into the courtroom, I presume in a wheelchair. Very pathetic and very . . . Do you think that murder is worse than a leg amputation? Well, clearly a murder is a final ending of a life. There's nothing more serious than that, of course. But I think the spectacle of seeing a person who's been shot in the legs and as a result had one of the legs amputated and for the rest of his life is going to be in a wheelchair, that's extremely sympathy-inducing type of testimony. I don't think anybody could get past that. In a way, more sympathy-inducing than even if he had died. I would submit that. When I think of this case, to me, that is the worst thing that Mr. Smothers was ever accused of doing, more than any other act that was testified to at the trial. Are you arguing also that this is more dramatic because they would not let him bring in evidence of possible police hatred of him? That is, again, in terms of how you affect the jury, this affects the jury in one direction. You make the argument that he can't say that he had been shot and had got damages because the police were against him. Yes. Are you kind of linking these two in terms of the court doing two things which are different? Your Honor, I didn't set out to do that, but the way the case kind of plays out, it's kind of inevitable to look at it that way where the court is allowing a person to come in to say who said in the past, in prior proceedings, this man shot me and put me in a wheelchair for the rest of my life. That's relevant, but the fact that Mr. Smothers himself was shot by the police, that's not probative of anything because it's going to confuse the jury, mislead them. We say that all the time. Yes. That's why you haven't even bothered to make the argument till I raised it. Well, I was getting to it, but the point is it is somewhat ironic to have one ruling which allows in this… That's what I was suggesting. …a 10-year-old shooting where the witness is currently denying that this is the person who even committed that act, and then to preclude the accused from taking the stand and telling the jury how he was shot by police officers from the very same precinct where he lived and where he was alleged to have committed all of these crimes. But that's not relevant to anything because it wasn't the same police officers who shot him. There's no evidence that the officers who were filed in the investigation in this case even knew about that shooting and had any motive against Mr. Smothers. That, I would submit, was for the jury to decide. But based on what evidence? I mean, right, that Mr. Smothers couldn't testify as to the motivation of unnamed police officers.  No, that's absolutely true. But, again, these are police officers, the ones who shot him from the 75th Precinct, and that is the precinct where all of his activities were being investigated over the years. It was officers and detectives from that precinct that led to the prosecution in this case. They had interviewed witnesses in the case. They had conducted a number of investigations, had arrested Mr. Smothers on several occasions. So to simply say, well, we can't prove that those officers knew about the fellow officers from that precinct which shot Mr. Smothers, I don't think that should be Mr. Smothers' burden. I don't think he should be tasked with having to prove that these particular officers were either involved in his shooting or knew about the shooting. They're members of the same organization. The NYPD, however we want to characterize it, is an organization. I mean, so given all of that attenuation and the limits as to what he could have testified to, so even if it could have come in under a harmlessness analysis in light of the multiple witnesses testifying and all of the other evidence, how should we think about that? Well, I would submit it's not harmless because for one thing, it appears to me Mr. Smothers was the only potential witness who could have described the shooting that was committed against him by the police. There was nobody else that… No, I'm saying take that, so assume error.  And so there's a supposition, I guess, or an inference that somehow this police department had it out for him and so I'm not sure what, but whatever. Well… It's hard to know given the limit, but take your sort of best available inference.  And then weigh that against the other evidence in the case as to guilt. Right. Well, for one thing, it's difficult to respond to that because as a result of the court's ruling, he did not take the stand in his own defense. So we can't really say exactly what he would have described or how it would have been conveyed to the jury. Well, what's your best version of what it would be? Well, that these police officers were basically out to take vengeance against him because they had wrongfully shot him on one occasion and he had sued the police department and had collected a pretty large money judgment against the police department. These were all motives. But he couldn't testify to the motives. He could testify if it had been allowed, he would testify as to the facts. And then the jury could then infer that the officers who were involved in the investigation in this case had a motive. But we then have to weigh that against all the evidence that there was. Okay. Because even if the police were badly motivated in going after him, when they went after him, if they found overwhelming evidence, then their motive doesn't really matter, does it? Or does it… I would agree if that were true. Yeah, if. I said if. And I would submit to the court the evidence against Mr. Smothers was not overwhelming in this case. You had no forensic evidence tying him to any of the charged crimes. You had basically cooperating witnesses who were testifying in exchange for very large promises from the government to extend leniency for the most serious charges that any of us could imagine. So you have multiple witnesses identifying. Sure. But they were all – I mean, we had people – one of the star witnesses against Mr. Smothers I think had tried to jump out a window when he was 10 years old, was suffering from serious mental illness. All of the witnesses admitted that they had repeatedly lied to law enforcement officials throughout their lives and that at this trial, this was the very first time that they were being honest about anything in terms of their own criminal activities and the activities of others. They continually lied and about not just the most serious crimes, but all of the variety of crimes that they had committed. We're talking about crimes involving violence, involving drugs, frauds, every kind of fraud that you could think of, stealing mail, just every variety of crime that we could come up with. They were committing and getting away with it until they got caught on this case and decided to bargain with the government for leniency. So that's basically the government's case here. We didn't have a whole lot of testimony about witnessing Mr. Smothers committing crimes or violent crimes other than the bullet shooting. Other than that, it was almost nothing. In fact, most of the testimony that I read in the trial had to do with the co-defendant with all due respect to Mr. Corbin. He took up more of the trial testimony than Mr. Smothers did. What I read was that Mr. Smothers was the head honcho. He was the boss and that's it. Not a whole lot of detail involved in it because the witnesses apparently who the government called at the trial really didn't have much dealings with Mr. Smothers who seems to have been in prison for a good part of the duration of the indictment. I think we have your argument. Thank you. You've got some rebuttal time. May it please the court, Jonathan Siegel for the United States. I also represented the government at the district court below. There's obviously a number of topics here and I'm, of course, happy to go in whatever order the court wants. But if I could, I would like to start with one issue that actually hasn't come up yet because I'm worried if I don't raise it now, I won't get to it, which is the challenge to count two under whether count one can be a drug trafficking crime. And one thing that we raised in our brief that you're talking about Smothers. Yes. One thing that we raised in our brief that Mr. Smothers didn't even respond to in his reply is that that is untimely and barred. That kind of challenge to an indictment, which is clear on the face of the indictment, needs to be raised before trial in a motion to dismiss. That was not done here and under Rule 12. Let me see. I don't know if we're talking about the same thing, but there is something here that is troublesome to me. That is, guilt as to conspiracy in RICO is immensely broad, much broader. One can be found guilty to conspiring in RICO much more broadly than to be found guilty of conspiring to ordinary conspiracy. But we require that that guilt be related to drugs. And we've been quite tight on what related to means. Now, here he was found guilty of this very broad RICO thing. How is it clear that what he was found guilty of was actually related to drugs? Now, one can say, you know, this is plain error. The distinction has never been made. So you may win on that ground. But isn't that an issue that is really in this case? And that troubles me very much. I think there are three ways that we know that, Your Honor. First of all, in the jury instructions, the jury was instructed that they could not convict of Count 2 unless they specifically found that the RICO conspiracy included an agreement to engage in narcotics trafficking. Second, in the verdict form, that was reiterated in the verdict form as to Count 2. It said, do not reach this question unless you find that the Count 1 RICO conspiracy included an agreement to violate the narcotics laws. And there was a jury note to which a similar instruction was given without any objection from Mr. Smothers. So here the pattern of racketeering that was alleged included narcotics violations. It would have been possible. You say that that is an issue which is a relevant issue, but that in this case the jury instructions, quite apart from a failure to object, would be enough. That's right. I think if it was just any time that there's a RICO charge, that could be a drug trafficking crime. I don't think that would be sufficient, and that's certainly not this case. But where it is alleged— See, the reason I worry about it is that if we don't focus and make it clear, there will be cases where a mistake is made. And then things will flip improperly because we haven't covered it. Your Honor, I think this case should be affirmed, and it should be clear that the reason it should be affirmed is because the jury instructions here made clear, and the verdict form, although I don't think that was necessary, but the instructions here did make clear that the jury could not find this to be a drug trafficking crime unless they found that the agreement included an agreement that they would engage in drug trafficking as part of their pattern of racketeering acts. I think under those facts, there's really no issue. But ultimately, and that's what I started to say, I don't even think you need to reach the merits of it. Because it's not timely, and the rule is that in order to raise something in an untimely way, there needs to be good cause. And without good cause, it's not even reviewable for plain error. Here, there was no good cause, and there's never even been an argument that there was good cause because there was not. And there's no response in the reply to your contention that it needed to be raised. It simply did not address that. So I think, frankly, the court doesn't need to raise it. But if the court does raise it, there was no error for the reasons we've just discussed and the reason that Judge Matsumoto laid out, which included what we just discussed. There was certainly no plain error, nor can any of the other requirements ever be met. With that, I would like to move to the issue that Judge Calabresi raised as to the statute of limitations for Mr. Corbett. There is no question that the statute of limitations statute is written in the disjunctive. And it says that if something is barred by the statute of limitations, you cannot be punished, you cannot be tried, you cannot be sentenced. Actually, you cannot be prosecuted, tried, or punished. There's no disagreement from anyone that a statute of limitations defense would bar sentencing, it would bar trial, it would bar prosecution. The question here is, when is a statute of limitations defense appropriately raised? And for 70 years, at least, it has been established that that defense must be raised before trial. And if you don't raise the defense before trial, then you lose the entire defense. It is not that you have three separate statute of limitations defenses, you can waive one and not waive the other. You have one statute of limitations defense, it does a number of things, including barring, prosecution, trial, and punishment. But if it's waived, if it's not used, it's gone forever. And I think that actually thinking through the results of what that would look like really show why that's necessary. In addition to all the case law from this court and the Supreme Court saying that the defendant must raise it, the defendant must raise it before trial, Judge Calabresi said, well, maybe it wouldn't make a lot of sense, but it wouldn't be absurd. I submit that it would be absurd. Here he pleaded guilty to a 924C count, which has a mandatory minimum of 10 years. The idea that you can plead guilty to that, but then actually not have the mandatory minimum of 10 years, I suppose not have the mandatory $100 special assessment, that doesn't make sense and clearly violates the statutory scheme. And it's not what was intended by the plea agreement here. But that's what the statute, you just admitted that the statute says that. Now, you know, if it doesn't make sense, it would mean that the court would say, I won't let you plead guilty to A and B, or to waive the statute as to one or two and not the other. But it's hard to say, but if a statute does require the things that were disjuncted, even a vote may not make much sense. No, I respectfully submit that's not what the statute says. The statute doesn't say you can be tried, but not punished. It's if something is barred, you can't be prosecuted, tried, or punished. Well, if you can't be prosecuted, can you be tried? If the statute of limitations is raised, none of it can happen. And if you can't be tried, can you be punished? No. So it does seem odd or redundant or something that all three are there, no? I submit not. I mean, why does it delineate the three, oddly not conviction? It's old. That's one thing we know. It's old, but I don't know. But what I do know is that every case that is ever addressed when a statute of limitations defense needs to be raised has made it clear that it needs to be raised before trial. That's a different argument, that it has to be raised at the beginning and it wasn't specific. Well, but ultimately I think to me it is the same argument. Whether or not you are raising a statute of limitations against prosecution, trial, or punishment, there is a timeliness requirement for when you raise it, and that is to raise it before trial. In addition to the absurdity of getting a conviction for a 924C with a mandatory minimum, but then not facing a mandatory minimum, there's the issue of how— Well, but again, you know, you might say, a defendant might say, I don't like the idea of a mandatory minimum. A mandatory minimum is wrong. I'm willing to waive the statute of limitations, see that I committed the crime, and I will take all the other consequences except the mandatory minimum. That's what the opposing counsel said, and, you know, it could be. I don't mean that this is effective to this case for any number of reasons, but again, I think one wants to be careful because if you win on the wrong ground here, you may be inviting in another case a person to do that and win when all it would take would be for the court to say, okay, are you waiving this too? And one of our jobs is to try to avoid future errors. I think the right way to rule in this case is to adhere to every precedent that has ever touched on the statute of limitations and to say that the time to raise it is before a guilty plea or trial. And I think this case and many cases you could imagine, there could be factual disputes about a statute of limitations, as there is here. There's a dispute about whether 3297 applies. If someone can plead guilty but then raise it at sentencing, the question is who would resolve those factual disputes. This court held in Samson that factual disputes about a statute of limitations need to be resolved by a jury at trial. And here, Mr. Corbett raised, well, there may be disputes. You should remand it back to the district court for fact-finding. But that's not appropriate. You would have to remand it back to the district court for a jury trial. And in other words, that's that he doesn't really want to plead guilty. And he was given the option to make a motion to withdraw. And I think very sensibly and strategically, he did not. I think it's easy to lose sight. This was a very favorable plea offer to Mr. Corbett. He was facing mandatory life on the murder, and that was in the statute of limitations. And so to allow him to plead guilty to 924C with lower guidelines, without the mandatory life, it made sense. He did it. He didn't want to undo it. And to allow that to be unwound because he's raised this entirely novel argument that would require fact-finding in front of a jury really does not make sense. Do you agree that this argument as articulated now was raised below or some version of it? I think some version of it was raised. I would certainly be happy for this to be on a pure plain error standard. I think although he didn't raise it as well as counsel here has raised it, focusing on the disjunctive language, the argument for Mr. Corbett was, I can plead guilty, but I can't be sentenced, and that those are logically distinct. It's not the exact same words, but I think it's the same principle. He made that argument but not on the basis of the statutory language. I think that's right.  And then after that argument, he did decline to withdraw his plea. That's right. So if one reads it as having been raised, then when the court says in the light of that, they didn't say in the light of that, but if we read it in the light of that, do you want to withdraw your plea, then when he doesn't withdraw his plea, he concedes. I think any claim—I think he has waived any claim that his plea was not voluntary or not knowing and not intelligent, but in terms of the argument of could he be sentenced, I think by doing exactly what you just said, the judge would have ruled against him, and I don't think that would necessarily be waived. I think it's plainly meritless, but I don't think that aspect of it is waived. Your Honor, turning to the issue—oh, and I'm sorry, and I do just want to raise something that Judge Nathan raised about if you're tried and found guilty, that the jury's verdict would be conclusive as to that. I think as Judge Nathan said, there's absolutely no reason that the same wouldn't apply for a guilty plea, and that's exactly what courts have said. I believe it's the Brose case, B-R-O-C-E, from the Supreme Court that we cited in our brief, is that when someone pleads guilty, they are admitting everything that the jury would need to find and waiving their defenses, and that certainly applies here just as it did in that case. Moving on to the arguments of Mr. Smothers about Mr. Bullock, again, I think it's important to focus in on what was actually raised in the brief. His argument that Mr. Bullock's statements did not properly fall under Rule 801 was not raised in his opening brief. It was raised for the first time in the reply, and therefore I don't think it's appropriately before the court. Even if it were considered, as Judge Matsumoto found, and this was litigated in the district court, it was properly admitted under Rule 801. As to the grand jury, it was testimony in prior proceeding that was under oath. As to the prior identifications, the rule doesn't require it to be a line-up or a show-up. It just has to be that his statements about someone who he previously perceived and identified. Testimony such as, the person who shot me was Fondel Smothers, is classic testimony under that prong. It would also be, although you don't even need to reach that, an excited utterance when a person is in an ambulance and being asked what happened and saying, I was shot by Chuckie, as happened here. As to the Rule 403 arguments, Mr. Smothers' counsel suggested this is somehow not prerogative as to propensity. And I think that that really misunderstands, frankly, the entire case. Count 1 was a racketeering conspiracy that alleged predicate acts in a pattern of racketeering activity, including not just drug dealing, but also murder, murder conspiracy, and attempted murder. The fact that he had, in fact, attempted to murder someone is evidence that he was part of the conspiracy and had, in fact, agreed to engage in that pattern of racketeering activity, including murder and attempted murder. Count 2 was a firearms count in furtherance of Count 1. The fact that he did, in fact, shoot someone as part of this racketeering conspiracy in what one of the witnesses described as partly a drug dispute is relevant to proving Count 2. Counsel said that this was from 10 years ago, but it was all within the time frame of the alleged conspiracy. So it's strongly probative. This was the primary incidence of Mr. Smothers himself engaging in an attempted murder, and testimony about that was highly probative. In terms of the prejudicial effect, the testimony that he had shot Damian Bullock and that Damian Bullock had lost his leg, that came in through one of the cooperating witnesses, John Warren. So the testimony from the grand jury and from the ambulance that corroborated that cooperator, in addition to being relevant to corroborate that evidence, which was itself highly probative, the fact that it strongly corroborated one of the key cooperators in the case, in a case that, as counsel notes, did rely on cooperator testimony, is itself highly probative. The prejudicial value, the prejudicial impact is simply that he engaged in this conduct, but that is the crime. There's nothing prejudicial about the jury hearing that you committed the crime that you are charged with committing. I would also submit that this was harmless. In addition to the testimony of two cooperating witnesses, there was recorded jail calls where people talked about Mr. Smothers and his role in the gang. There were phones seized from Mr. Smothers from cooperating witnesses that had photos of Mr. Smothers with the cooperating witnesses that had gang oaths, that had gang lineups listing the leadership of the gang, including Mr. Smothers. This was a very strong case of which Mr. Bullock's testimony was really only one part. So for these reasons, Your Honor, we would submit that both judgments should be affirmed in all respects, and while I'm happy to answer any additional questions, we would otherwise rest on our submission. Thank you. Briefly, Your Honors. Counsel refers to every precedent stating that a statute of limitations defense had to be raised before trial, but all of those precedents involve challenges to the conviction. In none of them did the defendant raise the statute of limitations as an independent defense to sentencing. So those precedents don't govern here, and there are three separate. Why is it, if the three things are each there, why isn't it equally sensible to say you have to raise the statute of limitations with respect to sentencing? Because there are three separate statute of limitations defenses due to the disjunctive language. That's right, but why shouldn't you have to raise all of them so that in what happens afterwards, they know what to do about it? Well, Judge, I mean, a right not to be sentenced doesn't come into play unless and until you've already either admitted guilt or been found guilty. And that is true of a right to trial as against prosecuting. Trial doesn't happen until after prosecuting. So are you saying you must raise the right not to be prosecuted at time one, and then at time two, the right not to be tried, and then at time three, the right not to be sentenced? Why isn't it sensible to say if you've got these defenses, raise them all? I mean, procedurally, you can't make a motion or seek that kind of relief before a prosecution is initiated. I mean, mandamus is really not available to prevent a prosecution. So in practical terms, there's no way to raise a statute of limitations defense before a prosecution is initiated. Well, if you're indicted, you could immediately say I'm seeking to throw out this indictment because of a statute of limitations, and I can't be prosecuted further for this, right? Yes, you'll raise it. And that would mean you don't have to bring your trial right, I guess, your statute of limitations defense as to the trial until what, the eve of trial or before trial ends? By what time do you have to bring the defense with respect to trial? You could raise the statute. You could raise that defense at trial. It doesn't have to be raised in a pretrial motion. You can assert a statute of limitations defense, which the jury will then have to determine if there are disputed facts, as counsel said, that the statute turns on. You don't have to raise that in a Rule 12 motion. You can raise it before the jury. So there are three times when this defense can be raised. You can raise it as a defense to prosecution under Rule 12. You can raise it as a defense to trial at the time of trial. You can raise it as a defense to punishment. And the time to raise defenses as to punishment is after a determination of guilt. And in terms of the factual dispute having to be resolved by a jury, a defendant can consent to have issues resolved by a judge. And the Mr. Corbett in this case has consented. And finally, as to the preservation issue, I would submit a defense, I can plead guilty but I can't be sentenced, implicates the statute of limitations. Sorry, I wanted to pause. You said he's consented to it be decided by the judge, but that presumes that it hasn't been decided with respect to his conviction to which he pled guilty. And to go back to my hypo question, I think it just circles back precisely to that. If you go to trial and you're tried on your statute of limitations defense and fail, you say that's decided. You don't get to raise it again. That's effectively what you're asking with respect to sentencing even though 3802 has all three. But that's effectively, isn't it, what you're asking here having pled to the conviction? Well, I'm having pled pursuant to an agreement containing specific language that says that the statute of limitations defense is waived as the counts that are not time barred as the date of this agreement. If that language was not there, Judge, I might be agreeing with you. But by using that language, the government limited the scope of the waiver. And there is case law holding that where the government includes language in a plea agreement like that that limits the scope of a waiver even unintentionally, that the issue is not waived even if just a general open plea would have waived it. And just finally, on the preservation issue, again, I would submit that, quote, I can plead guilty but I can't be sentenced. The only possible basis for that is the disjunctive statutory language. So it does implicate that. And given that the defendant decided not to withdraw his guilty plea only after the court ruled on that issue and said, look, I can't decline to sentence you unless you withdraw your plea. The court had ruled on the merits of the issue before the court. There was a final determination of that issue. It was preserved. It was not waived by anything the defendant did later. Again, I thank the court for its indulgence in terms of time. And if there are no further questions, I'll rest on the briefs. All right. Thank you. Very briefly, again, I disagree with the government's characterization of the case against Mr. Smothers as being an overwhelmingly strong one. I don't see that. Of course, I didn't try the case, but based on my review of the transcript, I don't see overwhelming proof of any of the crimes that he was accused of. In terms of the drug trafficking claim that we've raised, if this court is not satisfied that the claim was raised in a timely fashion, then I'm sure that Mr. Smothers can return to the district court and litigate perhaps as a 2255 application. But in any event, we do believe that the RICO conspiracy does not qualify as a drug trafficking crime, and therefore, the firearm offense should be vacated on that basis. And I thank the court for all that's done. All right. Thank you. Thank you to all of you. We'll take this case under advisement.